# United States District Court

## SOUTHERN DISTRICT OF INDIANA

**UNITED STATES OF AMERICA**

**v.**

**JERRY BOUCHER**

## CRIMINAL COMPLAINT

CASE NUMBER: 1:16-mj-0538

I, the undersigned complainant being duly sworn state the following is true and correct to the best of my knowledge and belief.

Counts One through Ten: Between in or about July 2016 and on or about August 17, 2016, in Hendricks County, in the Southern District of Indiana, JERRY BOUCHER knowingly received visual depictions of minors engaging in sexually explicit conduct, in violation of 18.U.S.C. § 2252(a)(2).

Count Eleven: On or about August 17, 2016, in Hendricks County, in the Southern District of Indiana, JERRY BOUCHER knowingly possessed a computer storage device containing visual depictions of minors engaging in sexually explicit conduct, in violation of Title 18 U.S.C. § 2252A.

I further state that I am a Special Agent, and that this complaint is based on the following facts:

**<u>SEE ATTACHED AFFIDAVIT</u>**

**Continued on the attached sheet and made a part hereof.**

[signature]

Special Agent Michael Johnson, HSI

**Sworn to before me, and subscribed in my presence**

August 18, 2016 at Indianapolis, Indiana
**Date**

[signature]

Mark J. Dinsmore, U.S. Magistrate Judge
**Name and Title of Judicial Officer**

**Signature of Judicial Officer**

## AFFIDAVIT

I, Special Agent Michael Johnson, being duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1. **Affiant**: I am a Special Agent with the Department of Homeland Security, Homeland Security Investigations ("HSI"). I am currently assigned to the Office of the Resident Agent in Charge, Indianapolis, Indiana (RAC/IP). I have been employed as a Special Agent with HSI since February of 2006. Before being appointed as a Special Agent with HSI, I was a Police Officer for the City of Indianapolis for approximately eleven years. The last four years, I was assigned to a federal task force. During my experience with both agencies, I have been involved in numerous investigations, including those involving production, advertising, distribution and possession of child pornography. I have had training through the Federal Law Enforcement Training Center, HSI, the Indiana State Police, Office of Juvenile Justice Prevention, the United States Attorney's Office, and Project Safe Childhood in investigating computer related crimes and child exploitation. Since being employed with HSI, I was temporarily assigned to HSI's Cyber Crimes Center (C3). During that assignment, I worked on active undercover cyber investigations as well as the cataloging of over 10,000 images and videos of child pornography. I have been involved in over one-hundred investigations pertaining to the sexual exploitation of children.

2. **Information provided**: Because this affidavit is being submitted for the limited purpose of securing an arrest warrant and criminal complaint, I have not included each and every fact known to me concerning this investigation. I have set forth only the facts that I believe are necessary to establish probable cause that **Jerry Joseph Boucher** (DOB: 1973)("**Boucher**") has violated the following statutes

a. Counts 1 through 10, 18 U.S.C. § 2252(a)(2)( receipt of child pornography); and

b. Count 11, 18 U.S.C. § 2252A (possession of child pornography).

3. **Requested action**: I have set forth the facts that I believe necessary to establish probable cause to believe that **Boucher** has violated **18 U.S.C. §§ 2252(a)(2) and 2252A**.

4. **Child Pornography Trafficking (18 U.S.C. § 2252):** 18 U.S.C. § 2252 prohibits a person from knowingly transporting, shipping, receiving, distributing, reproducing for distribution, or possessing any visual depiction of minors engaging in sexually explicit conduct when such visual depiction was either mailed or shipped or transported in interstate or foreign commerce by any means, including by computer, or when such visual depiction was produced using materials that had traveled in interstate or foreign commerce.

5. **Definitions**: The following definitions apply to this Affidavit:

6. "Child Pornography" means any visual depiction of sexually explicit conduct where (a) the production of the visual depiction involved the use of a

minor engaged in sexually explicit conduct, (b) the visual depiction is a digital image, computer image, or computer-generated image that is, or is indistinguishable from, that of a minor engaged in sexually explicit conduct, or (c) the visual depiction has been created, adapted, or modified to appear that an identifiable minor is engaged in sexually explicit conduct. *See* 18 U.S.C. § 2256.

7. "Minor" means any person under the age of eighteen years. *See* 18 U.S.C. § 2256(1).

8. "Sexually explicit conduct" means actual or simulated (a) sexual intercourse, including genital-genital, oral-genital, or oral-anal, whether between persons of the same or opposite sex; (b) bestiality; (c) masturbation; (d) sadistic or masochistic abuse; or (e) lascivious exhibition of the genitals or pubic area of any person. *See* 18 U.S.C. § 2256(2).

9. "Visual depictions" include undeveloped film and videotape, and data stored on computer disk or by electronic means, which is capable of conversion into a visual image. *See* 18 U.S.C. § 2256(5).

10. **File Sharing Software:** Peer-to-Peer ("P2P") file sharing is a method of communication available to Internet users through the use of special software. Computers linked together through the Internet using P2P software form a network that allows for the sharing of digital files between users on the network. A user first obtains the P2P software, which can be downloaded from the Internet. In general, P2P software allows the user to set up file(s) on a

computer to be shared with others running compatible P2P software. A user obtains files by opening the P2P software on the user's computer, and conducting a search for files currently being shared on the network. BitTorrent, one type of P2P software, sets up its searches using keywords. The results of a keyword search are displayed to the user. The user then selects file(s) from the results for download. The download of a file is achieved through a direct connection between the computer requesting the file and the computer(s) sharing the file.

11. For example, a person interested in obtaining child pornography image or videos would open the P2P application on his/ her computer and would conduct a keyword search for files using a term such as "pre-teen sex." That keyword search is sent out over the network of computers using compatible P2P software. The results of the search are returned to the user's computer and displayed. The user selects from the results displayed the file(s) he or she wants to download. Selected files are downloaded directly from the computer sharing the file. The downloaded file is stored in the area previously designated by the user and/or the software. The downloaded file will remain until moved or deleted.

12. One of the advantages of P2P file sharing is that multiple files may be downloaded in parallel. This means that the user can download more than one file at a time. In addition, a user may download parts of one file from more than one source computer at a time. For example, a BitTorrent user

downloading an image file may actually receive parts of the image from multiple computers. The advantage of this is that it speeds up the time it takes to download the file. From time to time, a user downloading a file may receive the entire file from one computer.

13. Files being shared by users on a P2P network are processed by the user's P2P software. As part of this processing, a hashed algorithm value is computed for each file and/or piece of a file being shared (dependant on the P2P file sharing network), which uniquely identifies it on the network. A file (or piece of a file) processed by this hash algorithm operation results in the creation of an associated hash value often referred to as a digital signature. Some hash algorithms provide a certainty exceeding 99.99 percent that two or more files with the same hash value are identical copies of the same file regardless of their file names. By using a hash algorithm to uniquely identify files on a P2P network, it improves the network efficiency. Because of this, users may receive a selected file from numerous sources by accepting segments of the same file from multiple clients and then reassembling the complete file on the local computer. This is referred to as multiple source downloads. The user's P2P software succeeds in reassembling the file from different sources only if all the segments came from exact copies of the same file. P2P file sharing networks use hash values to ensure exact copies of the same file are used during this process.

14. A P2P file transfer is assisted by reference to an Internet Protocol

(IP) address. This address, expressed as four numbers separated by decimal points, is unique to a particular computer during an online session. The IP address provides a unique location, making it possible for data to be transferred between computers.

15. The computer running the file sharing application (in this case BitTorrent) has an IP address assigned to it while it is on the Internet. Investigators are able to see the IP address of any computer system sharing files. Investigators can then search public records to determine the Internet service provider that has assigned the particular IP address. Based upon the IP address assigned to the computer sharing files, subscriber information can be obtained from the Internet service provider.

16. **The Bittorrent Network:** Based on my experience I have learned that the BitTorrent network is being used to trade digital files, including still images and video files, containing child pornography. The BitTorrent file sharing network has the following characteristics:

17. The BitTorrent network is a very popular and publically available peer to peer file sharing network. Most computers that are part of this network are referred to as "peers". A peer can simultaneously provide files to some peers while downloading files from other peers.

18. The BitTorrent network can be accessed by computers running P2P software programs such as BitTorrent, µTorrent, Vuze, and many others. These programs are publically available for free and can be downloaded from

the Internet. There are also BitTorrent P2P software programs that are not free. These BitTorrent P2P software programs share common protocols for network access and file sharing. The user interface, its features, and its configuration may vary between clients and versions of the same client.

19. During the installation of typical BitTorrent network client programs, various settings are established which configure the host computer to share files. Depending upon the BitTorrent software used, a user may have the ability to reconfigure some of those settings during installation or after the installation has been completed. Typically, a setting establishes the location of one or more directories or folders whose contents (files) are made available to other BitTorrent network users to download.

20. In order to share a file or a set of files on the BitTorrent network, a "Torrent" file needs to be created by the user that initially wants to share the file or set of files. A "Torrent" is typically a small file that describes the file(s) that are being shared, which may include information on how to locate the file(s) on the BitTorrent network. A typical BitTorrent software program will have the ability to create a "Torrent" file. It is important to note that the "Torrent" file does not contain the actual file(s) being shared, but information about the file(s) described in the "Torrent", such as the name(s) of the file(s) being referenced in the "Torrent" and the "info hash" of the "Torrent". The "info

hash" is a SHA-1[1] hash value of the set of data describing the file(s) referenced in the "Torrent", which include the SHA-1 hash value of each file piece, the file size, and the file name(s). The "info hash" of each "Torrent" uniquely identifies the "Torrent" file on the BitTorrent network.

21. The "Torrent" file may also contain information on how to locate file(s) referenced in the "Torrent" by identifying "Trackers". "Trackers" are computers on the BitTorrent network that collate information about the peers/clients that have recently reported they are sharing the file(s) referenced in the "Torrent" file. A "Tracker" is only a pointer to peers/clients on the network who may be sharing part or all of the file(s) referenced in the "Torrent". It is important to note that the "Trackers" do not actually have the file(s) and are used to facilitate the finding of other peers/clients that have the entire file(s) or at least a portion of the file(s) available for sharing. It should also be noted that the use of "Tracker(s)" on the BitTorrent network are not always necessary to locate peers/clients that have file(s) being shared from a particular "Torrent" file. There are many publically available servers on the Internet that provide BitTorrent tracker services.

22. Once a torrent is created, in order to share the file(s) referenced in the "Torrent" file, a user typically makes the "Torrent" available to other users, such as via websites on the Internet.

23. In order to locate "Torrent" files of interest, a typical user will use

keyword searches within the BitTorrent network client itself or on websites hosting "Torrents". Once a "Torrent" file is located that meets the keyword search criteria, the user will download the "Torrent" file to their computer. Alternatively, a user can also search for and locate "magnet links", which is a link that enables the BitTorrent network client program itself to download the "Torrent" to the computer. In either case, a "Torrent" file is downloaded to the user's computer. The BitTorrent network client will then process that "Torrent" file in order to find "Trackers" or utilize other means that will help facilitate finding other peers/clients on the network that have all or part of the file(s) referenced in the "Torrent" file. It is again important to note that the actual file(s) referenced in the "Torrent" are actually obtained directly from other peers/clients on the BitTorrent network and not the "Trackers" themselves. Typically, the "Trackers" on the network return information about remote peers/clients that have recently reported they have the same file(s) available for sharing (based on SHA-1 "info hash" value comparison), or parts of the same file(s), referenced in the "Torrent", to include the remote peers/clients Internet Protocol (IP) addresses.

24. For example, a person interested in obtaining child pornographic images on the BitTorrent network would open the BitTorrent client application on his/her computer and conduct a keyword search for files using a term such as "preteen sex." The results of the torrent search are typically returned to the user's computer by displaying them on the torrent hosting website. The

hosting website will typically display information about the torrent, which can include the name of the torrent file, the name of the file(s) referenced in the torrent file, the file(s) size, and the "info hash" SHA-1 value of the torrent file. The user then selects a torrent of interest to download to their computer. Typically, the BitTorrent client program will then process the torrent file. The user selects from the results displayed the file(s) they want to download that were referenced in the torrent file. Utilizing trackers and other BitTorrent network protocols (such as Distributed Hash Tables, Peer Exchange, and Local Peer Discovery), peers/clients are located that have recently reported they have the file(s) or parts of the file(s) referenced in the torrent file available for sharing. The file(s) is then downloaded directly from the computer(s) sharing the file. Typically, once the BitTorrent network client has downloaded part of a file(s), it may immediately begin sharing the file with other users on the network. The BitTorrent network client program succeeds in reassembling the file(s) from different sources only if it receives "pieces" with the exact SHA-1 piece hash described in the torrent file. During the download process, a typical BitTorrent client program displays the Internet Protocol address of the peers/clients that appear to be sharing part or all of the file(s) referenced in the torrent file or other methods utilized by the BitTorrent network protocols. The downloaded file is then stored in the area previously designated by the user and/or the client program. The downloaded file(s), including the torrent file, will remain until moved or deleted.

25. Typically, as described above, one method for an investigator to search the BitTorrent network for users possessing and/or disseminating child pornography files is to type in search terms, based on their training and experience, that would return a torrent filename indicative of child pornography. The investigator would then download the file(s) referenced within the torrent file and determine if the file(s) indeed contained child pornography.

26. **Presentence Investigation**: On July 22, 2016, Task Force Officer (TFO) John Pirics was conducting an online Internet investigation to identify those persons who were sharing child pornography using the BitTorrent network from the files they possessed. At approximately 8:03 a.m., a computer was located on the BitTorrent network sharing files from a torrent with the info hash of XXXX2569ce (redacted). After examining the torrent, TFO Pirics determined the total number of files associated with it was **551**.

27. The person using this computer utilized a file sharing program, which reported itself to be AZ5720. The computer was configured to share files from a shared folder. This computer was using Internet Protocol (IP) address **107.147.65.181** to connect to the internet.

28. On July 22, 2016 at approximately 8:03 a.m., a connection was made between TFO Pirics' computer and the computer using this IP address via the BitTorrent file sharing network. TFO Pirics downloaded multiple files being shared which were associated with a torrent having the info hash described

above.

29. TFO Pirics reviewed the downloaded files. TFO Pirics determined that a file folder named "*LS Magazine*" had been downloaded. TFO Pirics then provided the files and associated data to your affiant.

30. I reviewed the data and found folder "*LS Magazine*" which was the primary directory. Within this folder, I found **162** files. I examined the contents of this folder and observed downloaded images.

31. **Child Pornography**: Based upon my training and experience, I found that several of the images depicted children under the age of eighteen (18) years old, engaged in sexual acts and/or poses, and fall within the definition of sexually explicit conduct involving minors and child pornography set forth in 18 U.S.C. § 2256. The following are descriptions of three images downloaded from this IP address on July 22, 2016:

32. **File Name**: *lsm 04-08-102* - This image depicts a nude, prepubescent female child. The child is standing in a bathtub. The picture is oriented so that only the child's mid-section, including her pubic area, is all that is visible of the victim. A spray nozzle is being held by another person who is reaching between the victim's legs, spraying the child's pubic area with water.

33. **File Name**: *lsm 04-08-151* - This image shows two pre-pubescent female victims in a bathtub. Both children are standing and bending forward, in a position which exposes their genitals to the camera.

34. **File Name**: *lsm 002-033.* This image shows a pre-pubescent female child's pubic area. The victim is sitting in a bathtub, partially underwater. The child's legs are spread, exposing her genitals to the camera.

35. **Single Source Download**: During the downloading of the files associated with this torrent, the law enforcement investigative software generated logs which detailed the communication connections with the computer using the IP address described above. In addition, it generated a report of the downloaded files' SHA1 hashes. The images and videos that were downloaded were "single source" downloads, meaning the files came exclusively and wholly from the single suspect computer and not a group of computers possessing the same file.

36. **Resolving the IP Address**: A check of publicly available records maintained by an organization known as the MaxMind determined that the aforementioned IP address was assigned to the internet service provider Bright House Networks.

37. **ISP Information**: A subpoena was sent to Bright House Networks in order to identify the subscriber for the IP address listed above at the relevant date and time. On August 11, 2016, Bright House Networks responded to the subpoena and identified the subscriber who had been assigned to the IP address listed above during the relevant times of this investigation was **Jerry Boucher** at the 7818 Red Sunset Way, Avon, Indiana 46123 (Subject Premises).

38. **Background on Jerry Boucher:** A check of a publically available database shows the Boucher resides at the Subject Premises. Hendricks County, Indiana property records list Boucher as the owner of the Subject Premises. Jerry Boucher was employed as a children's volleyball coach

39. **Search Warrant:** On August 17, 2016, a Federal search warrant was served at Boucher's residence. During the search, computers and storage media were located in what appeared to be Boucher's bedroom. Among the storage media was a Seagate 4 terabyte external hard drive (S/N: NA5KHMZ7). Within the folder structure of this drive was a folder named "Vuze Downloads." I know this to be the name assigned by the Bit Torrent client "Vuze" to the application's default download location.

40. Within the folder "Vuze Dowloads" were a number of files that were video files containing visual depictions of minors engaging in sexually explicit conduct, including:

41. Count 1: _lsv-001A.avi

42. Count 2 _lsv-001B.avi

43. Count 3 _lsv-002B.avi

44. Count 4 _lsv-006A.avi

45. Count 5 _lsv-006B.avi

46. Count 6 lsm-Rada.avi

47. Count 7 v111.avi

48. Count 8 v111a.avi

49. Count 9 v116.avi

50. Count 10 v116a.avi

All of the above video files depict prepubescent female victims. The children are dressed in the beginning of the videos and dancing. The victims then disrobe during the video and continue dancing, at times displaying their genital and pubic area to the camera.

51. **Interview of Boucher**: During the serving of the search warrant, Boucher was not at his residence. He was located and subsequently interviewed at his place of employment. Boucher was told by your affiant that he (Boucher) was not in custody. Boucher was then advised of his rights verbally, which he indicated that he understood. He then agreed to speak to your affiant.

52. Boucher admitted to intentionally downloading child pornography using Vuze and storing the material at his residence. He stated that he first saw child pornography online in 1997, but claimed that he had only been downloading and storing the child pornography for the last month. He said that he collected the material because he was curious.

53. Boucher admitted to using the following search terms via Vuze to obtain child pornography from the Bit Torrent network: LS, LS Dreams, LS Magazine, Young, Teen, Lolita and Pre-teen. I know all of the terms to be associated with child pornography and frequently used by offenders to search for such material online.

54. The Bittorrent file sharing network is a facility of interstate or foreign commerce, and its use is in or affecting such commerce. Also, the Seagate 4 terabyte external hard drive recovered from the Subject Premises were manufactured outside the state of Indiana. The child pornography stored on this device is the subject of Count 11 (possession of child pornography).

55. **Conclusion**: Based upon the contents of this Affidavit, I respectfully request that the Court issue an arrest warrant and criminal complaint for the offenses listed above.

Michael D. Johnson
Special Agent
Homeland Security Investigations

Subscribed and sworn before me this 18th day of August, 2016.

Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana